IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| LORI LAIRD,<br><br>            Plaintiff,<br><br>v.<br><br>SPANISH FORK NURSING AND REHABILITATION MANAGEMENT, LLC,<br><br>            Defendant. | MEMORANDUM DECISION AND ORDER<br><br><br>Case No. 2:14cv850<br><br><br>Magistrate Judge Paul M. Warner |

On February 17, 2015, all parties consented to having United States Magistrate Judge Paul M. Warner conduct all proceedings in the case, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit.[1]  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  Before the court is Spanish Fork Nursing and Rehabilitation Management, LLC's ("Defendant") motion to dismiss.[2]  The court has carefully reviewed the motion and memoranda submitted by the parties.  Pursuant to civil rule 7-1(f) of the United States District Court for the District of Utah Rules of Practice, the court elects to determine the motion on the basis of the written memoranda and finds that oral argument would not be helpful or necessary.  *See* DUCivR 7-1(f).

---

[1] *See* docket no. 12.

[2] *See* docket no. 4.

## BACKGROUND

The following alleged background facts are taken from Lori Laird's ("Plaintiff") complaint. Plaintiff is a registered nurse who was employed as Assistant to the Director of Nurses at the Spanish Fork Nursing & Rehabilitation Center ("The Center") in Spanish Fork, Utah. On or about May 1, 2014, Defendant purchased The Center from its previous owner. Defendant continued to employ Plaintiff as Assistant to the Director of Nurses for The Center.

As of May 1, 2014, only one or two of the approximately twenty-nine patients residing at The Center were receiving physical and/or occupational therapy as a part of their care. On May 7, 2014, Walter Eric Myers ("Myers"), Defendant's registered agent and new acting administrator, told Plaintiff that, under Defendant's policy, all patients residing at The Center would be given regular physical and/or occupational therapy. The therapies would be charged to the Centers for Medicare and Medicaid Services ("CMS") to increase Defendant's billings and profits. At that same time, Myers ordered Plaintiff to (1) write new assessment reports for each of The Center's patients, (2) modify the reports of each patient's condition to require physical and occupational therapy, and (3) backdate the new orders by two weeks thereby allowing Defendant to bill CMS for therapy that had not been authorized and/or given. Plaintiff verbally refused Myers's orders to backdate the assessment orders, believing that the added charges would be false and would create fraudulent billings to CMS. Myers responded by yelling at Plaintiff and threatening her. Plaintiff replied, "I'm not going to commit fraud for you or anyone else."

Defendant instructed another employee to backdate the assessment orders and hired other individuals to perform unnecessary physical and occupational therapy on all patients at The

Center. Believing that Defendant was intentionally submitting fraudulent Medicare claims to CMS in violation of federal law and public policy, Plaintiff reported the fraudulent claims to the CMS Inspector General and to the Utah Department of Professional Licensing. When Myers discovered that Plaintiff had reported Defendant to Utah state and federal agencies, Defendant terminated Plaintiff's employment on May 28, 2014.

In her complaint, Plaintiff alleges her termination constituted illegal discharge and retaliation in violation of the False Claims Act ("FCA"). *See* 31 U.S.C. § 3730(h). Plaintiff contends that her termination was intended to deprive her of legal rights and benefits, prevent her from making further reports to federal and state agencies, and serve as a warning to other employees. Plaintiff seeks reinstatement of her prior position, as well as backpay and damages.

## LEGAL STANDARD

To survive a motion to dismiss under 12(b)(6) of the Federal Rules of Civil Procedure, Plaintiff must allege enough factual matter, taken as true and viewed in the light most favorable to Plaintiff, to make her claim for relief facially plausible. *See Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2001). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the pleading standard contained in rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,'" it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 555 (2007)).

## ANALYSIS

Defendant moves to dismiss Plaintiff's complaint on the grounds that Plaintiff failed to follow the process for filing a *qui tam* action as required under the FCA.  *See* 31 U.S.C. § 3730(b).  In response, Plaintiff asserts that the complaint is not a *qui tam* action on behalf of the government under 31 U.S.C. § 3730(b), but rather a private civil action for retaliation under 31 U.S.C. § 3730(h).  In its reply, Defendant argues that Plaintiff's complaint still fails to state a claim because Plaintiff did not satisfy her burden of pleading all the factual elements necessary to file an action for retaliatory discharge under 31 U.S.C § 3730(h).  Specifically, Defendant asserts that Plaintiff failed to allege that she was terminated for activity that was taken in furtherance of a FCA enforcement action and that Defendant had adequate notice of her activity, and, thus, her complaint must be dismissed.  This court disagrees.

Under the FCA, "[a]ny employee" who "is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against . . . because of lawful acts done by the employee . . . in furtherance of an action under this section or other efforts to stop [one] or more violations of" the FCA may file suit.  31 U.S.C. § 3730(h)(1).  A plaintiff claiming retaliatory discharge under the FCA must plead facts to demonstrate that "defendants had been put on notice that plaintiff was either taking action in furtherance of a private *qui tam* action or assisting in an FCA action brought by the government."  *U.S. ex rel. Ramseyer v. Century Healthcare Corp.*, 90 F.3d 1514, 1522 (10th Cir. 1996).  Adequate notice may be provided by, inter alia, (1) "informing the employer of illegal activities that would constitute fraud on the United States," (2) "warning the employer of regulatory noncompliance and false reporting of information to a government agency," or (3) "explicitly informing the employer of an FCA violation."  *McBride*

*v. Peak Wellness Ctr., Inc.*, 688 F.3d 698, 704 (10th Cir. 2012) (quotations and citations omitted). "Although some form of notice is certainly required, an employee 'does not have to alert his employer to the prospect of a False Claims Act suit' because '§ 3730(h) does not require the employee to know that the investigation he was pursuing could lead to a False Claims Act suit.'" *U.S. ex rel. Sharp v. E. Okla. Orthopedic Ctr.*, No. 05-cv-572-TCK-TLW, 2013 WL 5816419, *13 (N.D. Okla. Oct. 29, 2013) (quoting *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1238 (D.C. Cir. 2012)). And, further, "the case law is clear that a retaliation claim can be maintained even if no FCA action is ultimately successful or even filed." *Ramseyer*, 90 F.3d at 1522.

While Plaintiff's complaint is admittedly not rich in its detail, it is sufficient to survive a motion to dismiss. As noted above, Plaintiff alleges that she "verbally refused orders . . . to backdate the assessment[s] . . . believing the added charges would be false and would create fraudulent billings to CMS."[3] Plaintiff further states that upon refusing to follow these instructions, Myers responded by "yelling" and "threatening" her, to which she replied, "I'm not going to commit fraud for you or anyone else."[4] Plaintiff also asserts that upon discovering that she had reported the allegedly "fraudulent [Medicare] claims to the CMS Inspector General and . . . the Utah Department of Professional Licensing," Defendant terminated her employment.[5] The court concludes that Defendant had adequate notice of Plaintiff's actions and that her actions were taken in furtherance of an FCA enforcement action, or, at least were intended to stop

---

[3] Docket no. 2 at 3.

[4] *Id.*

[5] *Id.*

violations of the FCA. As such, Plaintiff's allegations are sufficient to state a claim for retaliatory discharge under the FCA. *See, e.g.*, *Sharp*, 2013 WL 5816419, at *11.

## CONCLUSION

Based on the foregoing, Defendant's motion to dismiss Plaintiff's complaint is hereby **DENIED**. Defendant is ordered to file an answer to the complaint on or before July 8, 2015.

**IT IS SO ORDERED**.

DATED this 17th day of June, 2015.

BY THE COURT:

_____
PAUL M. WARNER
United States Magistrate Judge